# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BRANDON S. LAVERGNE (#424227)**                     **CIVIL ACTION NO.**

**VERSUS**                                                                      **19-709-SDD-EWD**

**DOUGLAS McDONALD, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on November 23, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BRANDON S. LAVERGNE (#424227)**                    **CIVIL ACTION NO.**

**VERSUS**                                          **19-709-SDD-EWD**

**DOUGLAS McDONALD, ET AL.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Complaint[1] of Brandon S. Lavergne ("Plaintiff"), an inmate representing himself, who is incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana. The Complaint has been amended several times.[2] As Plaintiff is a prisoner seeking redress from officers and employees of a governmental entity, his Complaint is subject to screening pursuant to 28 U.S.C. § 1915A. Based on the analysis of each claim that follows, it is recommended that all of Plaintiff's claims be dismissed for failure to state claim upon which relief can be granted, except Plaintiff's claim for nominal and punitive damages against Douglas McDonald in his individual capacity for the alleged incident of excessive force occurring on January 10, 2019, and his claim against Darrell Vannoy, Joseph LaMartinaire, Tim Delaney, Jimmy Cruze, Chad Oubre, Ricky Sharky, and Douglas McDonald for not allowing Plaintiff to attend church services.

### I.    Background

Plaintiff filed the instant action on October 14, 2019 against Douglas McDonald ("McDonald"), Michael Vaughn ("Vaughn"), Darrell Vannoy ("Vannoy"), Joseph LaMartinaire ("LaMartinaire"), Tim Delaney ("Delaney"), Paul Smith ("Smith"), Tailor Griffin ("Griffin"), Ricky Sharky ("Sharky"), Gary Young ("Young"), Chad Oubre ("Oubre"), Jimmy Cruze

---

[1] R. Doc. 1.
[2] R. Docs. 3, 5, 6, 9, 10, 12 & 14.

("Cruze"), Bobbie Rousseau ("Rousseau"), Gorie Cougeot ("Cougeot") and "Unknown Medic EMT,"[3] each in their individual and official capacities,[4] alleging numerous violations of his constitutional rights, ranging from complaints regarding excessive punishments and retaliation to First Amendment violations related to "mail watch" an exercise of religion.

## II.    Law & Analysis

### A.  Standard of Review

Pursuant to 28 U.S.C. § 1915A, this Court is authorized to dismiss an action or claim against a governmental entity or an officer or employee of a governmental entity if the Court is satisfied that the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted.

A claim is factually frivolous if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'"[5]  A claim has no arguable basis in law if it is based upon an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."[6]  This provision gives judges not only the authority to dismiss a claim that is based on a meritless legal theory, but also the unusual power to pierce the veil of the factual allegations.[7]  Pleaded facts that are merely improbable or strange, however, are not frivolous for purposes of the screening process.[8] Screening is conducted before service of process and dismissal is proper as to any claim that is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.[9]

---

[3] R. Doc. 6, p. 1.
[4] R. Doc. 1, p. 4.
[5] *Denton v. Hernandez*, 504 U.S. 25, 33 (1992), *citing Neitzke v. Williams*, 490 U.S. 319, 325 (1989).
[6] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).
[7] *Denton,* 504 U.S. at 32.
[8] *Id.* at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992).
[9] *See*, 28 U.S.C. §1915A.

To determine whether the complaint states a claim under § 1915A, courts apply the same standard used for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[10] Accordingly, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[11]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[12]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]

### B. Plaintiff Has Stated a Claim for Excessive Force, but not for Deliberate Indifference

Plaintiff complains of an incident occurring on January 10, 2019. He was in the "hall" making a phone call when another inmate, Terry Smith ("Terry"), was let out of his cell without restraints.[14]  Officer Montgomery instructed Terry to return to his cell, but Terry refused.[15]  Due to Plaintiff's status of "CCR,"[16] he was not allowed to be in the hall at the same time as an officer, so Plaintiff left the hall and locked himself in the shower, approximately ten feet from the front door.[17]  When McDonald arrived and saw Plaintiff in the shower, McDonald instructed Leslie Dupont, another officer, to spray Terry with chemical agent.[18]  When the chemical agent was sprayed through the security hatch in the door, Terry turned on fans to blow toward the door and walked approximately 150 feet away from the door.[19] McDonald "kept looking at" Plaintiff while

---

[10] *Plascencia-Orozco v. Wilson*, 773 Fed. App'x. 208, 209 (5th Cir. 2019) (citation omitted); *Hart v. Hairston*, 343 F.3d 762, 763-64 (5th Cir. 2003).

[11] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[13] *Id.*

[14] R. Doc. 1-1, pp. 2-3.

[15] R. Doc. 1-1, p. 3.

[16] "CCR" is an acronym used by inmates that stands for "closed-cell restrictions," which limits an inmates out-of-cell time; it is analogous to solitary confinement.

[17] R. Doc. 1-1, p. 3.

[18] R. Doc. 1-1, p. 3.

[19] Plaintiff alleges that the chemical spray can only spray 20 feet at the most.  *Id.*

"encouraging Dupont to use the chemical agent." When McDonald saw Plaintiff react "in pain" to the chemical agent and being "violently coughing," McDonald started laughing.[20] Reading these facts in the light most favorable to Plaintiff, suggests that Plaintiff, not Terry, was the intended target of the chemical spray.[21]

Force is considered excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the purpose of causing harm rather than in a good faith effort to maintain or restore discipline.[22] However, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."[23] The Eighth Amendment's prohibition against cruel and unusual punishment, however, necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not "repugnant to the conscience of mankind."[24] Factors to be considered in determining whether an alleged use of force is excessive include the extent of injury sustained, if any; the need for the application of force; the relationship between the need for force and the amount of force utilized; the threat reasonably perceived by prison officials; and any efforts made to temper the severity of a forceful response.[25] Based upon Plaintiff's version of events, he was not acting in a manner to warrant the application of any force, yet force was intentionally used against him; thus, the *de minimis* nature of his injuries is not dispositive.[26] Accordingly, this claim should survive screening, with the following exceptions:[27] Based on Plaintiff's version of events, the only Defendant against whom this claim

---

[20] R. Doc. 1-1, p. 3.
[21] Plaintiff alleges that McDonald kept looking at Plaintiff and encouraging Dupont to continue using chemical spray, although Terry had moved so far from the door that the chemical could not have affected Terry.
[22] *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian,* 503 U.S. 1, 7 (1992).
[23] *Wilkins,* 559 U.S. at 38.
[24] *Hudson*, 503 U.S. at 10.
[25] *Id.* at 7.
[26] *Wilkins*, 559 U.S. at 39-40.
[27] This Report does not opine on the viability of the defense of qualified immunity to this claim.

should be maintained is McDonald. According to Plaintiff, McDonald was the only Defendant who realized Plaintiff was in the vicinity and was the Defendant who continued to order the use of force.[28] Further, though Dupont was involved, Plaintiff makes clear he is not bringing this claim against Dupont because Dupont is deceased.[29] Further, the minimal nature of Plaintiff's alleged injuries (coughing and irritated skin without lasting effects) precludes the recovery of punitive damages, although not the recovery of nominal or punitive damages.[30]

To the extent that Plaintiff claims the lingering effect of the chemical agent in his dorm violated his constitutional rights, such a claim fails because Plaintiff does not allege that exposure to the lingering chemical agent posed any serious risk of harm or that Defendants were aware of any serious risk of harm to Plaintiff.[31] Additionally, Plaintiff's claim that he had to wait two hours to shower does not state a claim of constitutional dimension.[32] Similarly, Plaintiff's claim against the "unknown EMT" fails because Plaintiff has only provided this Court with a conclusory

---

[28] "A supervisor who orders the use of force can be held liable in an excessive force case when there exists a causal connection between the supervisor's actions and the actions of the subordinates which cause the injury." *Gonzalez v. Gordy*, No. 18-220, 2020 WL 5413387, at *6 (S.D. Tex. June 11, 2020) (citing *Batiste v. City of Beaumont*, 421 F.Supp. 2d 969, 991 (E.D. Tex. 2006) (citing *Cousin v. Small*, 325 F.3d 627, 637-38 (5th Cir. 2003))).

[29] R. Doc. 1-1, p. 1.

[30] 42 U.S.C. § 1997e(e); *Tillman v. Gaspard*, No. 19-12819, 2019 WL 5847012, at *3 (E.D. La. Oct. 18, 2019) ("only *de minimis* injuries … are insufficient to justify an award of compensatory damages under 42 U.S.C. 1997e(e)."). "[E]xposure to chemical agents without long-lasting effects constitute, at best, a *de minimis* injury." *Braxton v. Renteria*, No. 17-125, 2017 WL 8677938, at n. 3 (N.D. Tex. Nov. 15, 2017) (citing *Bibbs v. Jones*, No. 11-1360, 2012 WL 1135584, at *2 (W.D. a. Apr. 4, 2012). Plaintiff does not allege any long-lasting negative effects due to the exposure of chemical agent and thus, is not entitled to compensatory damages. Further, to the extent Plaintiff has filed suit for monetary relief against McDonald and Dupont for this incident in their official capacities, such a claim also fails. 42 U.S.C. § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit for monetary damages against a state official in an official capacity is treated as a suit against the state and is therefore barred by the Eleventh Amendment.

[31] Serious risk of harm is a requirement of a conditions of confinement claim. *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019).

[32] *See Pea v. Cain*, No. 12-779, 2014 WL 268696, *7, n. 7 (M.D. La., Jan. 23, 2014) ("a failure to allow an inmate to shower after an application of irritant spray is not the type of wrongdoing that rises to the level of deliberate indifference.") (citing *Roach v. Caddo Parish Sheriff's Dept.*, No. 07-364, 2010 WL 420068 (W.D. La., Jan. 29, 2010); *Dufrene v. Tuner*, Civil Action No. 05-2066, 2006 WL 2620091 (W.D. La., Aug. 14, 2006).

allegation that the EMT "did NOTHING for [him]."[33]  Further, Plaintiff does not allege that he

was subject to any substantial risk of harm as a result of the EMT doing "NOTHING" for him.

### C.  Plaintiff Fails to State a Claim for Retaliation

It is well-established that prison officials may not retaliate against a prisoner for exercising

his constitutional rights.[34] Action against an inmate in retaliation for the inmate's exercise of his

First Amendment constitutional rights is a violation of the inmate's constitutional rights.[35]

Specifically, prison officials are not allowed to retaliate against an inmate because of the inmate's

exercise of his right to complain about the alleged wrongful conduct of prison security officers.

However, since claims of retaliation are not favored, it is the plaintiff''s burden to provide more

than mere conclusory allegations of retaliation:

> To state a claim of retaliation an inmate must ... be prepared to
> establish that but for the retaliatory motive the complained of
> incident ... would not have occurred. This places a significant burden
> on the inmate.... The inmate must produce direct evidence of
> motivation or, the more probable scenario, allege a chronology of
> events from which retaliation may plausibly be inferred.[36]

Further, to sustain a showing of a constitutional violation, the plaintiff must assert more than a *de

minimis* or inconsequential retaliatory adverse act.[37]

Here, Plaintiff is unable to prove that the actions he claims were retaliatory would not have

occurred but-for the retaliatory animus.[38]  Regarding the disciplinary action filed against Plaintiff

for simple escape, attempting escape and/or escaping are not permissible actions, and Plaintiff

---

[33] R. Doc. 1-1, p. 6.
[34] *Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir. 1986).
[35] *See, Woods v. Smith*, 60 F.3d. 1161, 1164-65 (5th Cir.1995).
[36] *Id.* at 1166.
[37] *Morris v. Powell,* 449 F.3d 682, 684-85 (5th Cir. 2017).
[38] *See Powell v. Martinez*, 579 Fed.App'x. 250, 252 (5th Cir. 2014) (holding that a plaintiff could not show retaliation because he had not alleged facts to establish that the acts he complained of would not have occurred absent the defendant's retaliatory motive).

does not allege that these disciplinary reports were entirely false.[39]  "While a prisoner can state a

claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim

can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner

was not entitled to perform."[40]

    With respect to the disciplinary reports for possession of a cell phone, receiving a watch

while in visitation, and having another inmate place a phone call on his behalf, Plaintiff does not

allege that any of these reports are false.[41]  With respect to the cell phone, Plaintiff does not allege

that possession of a cell phone is permissible.[42]  Rather, Plaintiff admits that a cell phone is

---

[39] This Court has already considered and dismissed Plaintiff's complaints regarding the disciplinary actions taken against him for his attempted escape (*Lavergne v. Stutes*, Civil Action No. 17-1696 c/w 18-693, 2019 WL 4619963, *2-3 (M.D. La. Sept. 10, 2019), so to the extent Plaintiff is making any claim regarding the disciplinary sentence for attempted escape or simple escape that is separate from the retaliation claim, such claims are not considered.

[40] *Morris v. Cross*, No. 09-236, 2010 WL 5684412, *7 (E.D. Tex. Dec. 17, 2010), *report and recommendation adopted*, 2011 WL 346071 (E.D. Tex. Feb. 1, 2011), aff'd, 476 Fed.App'x. (5th Cir. 2012) (internal quotation marks and citations omitted).

[41] With respect to most, if not all, of Plaintiff's complaints regarding disciplinary actions against him and sentences imposed, Plaintiff appears to argue that his equal protection rights are being violated because he is sentenced differently and receives harsher penalties than other prisoners.  This claim is without merit.  "To state an equal protection claim, [a prisoner] must allege, *inter alia*, that similarly situated individuals have been treated differently and he must also allege purposeful or intentional discrimination."  *McKnight v. Eason*, 227 Fed.App'x. 356 (5th Cir. 2007).  Further, in this case, Plaintiff is making a "class of one" claim.  A plaintiff makes a "class of one" claim when he alleges that he has been intentionally treated differently from others similarly situated without a rational basis for the treatment.  *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 601 (2008).  Plaintiff fails to allege that the inmates to which he is comparing himself are similarly situated.  Indeed, it would likely be difficult, if not impossible, to show that other inmates are similarly situated to Plaintiff, as he is incarcerated with a unique sentence of solitary confinement for life (discussed further below).  Because few, if any, other inmates are likely to have this custodial classification, there are no other inmates to whom Plaintiff may compare himself for purposes of an equal protection claim.  *See Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982) ("When classification is a necessary part of prison security, it does not amount to denial of equal protection of the laws.").  Further, because Plaintiff is already sentenced to a more restrictive confinement than other inmates, it is reasonable that, when Plaintiff must be sentenced for disciplinary violations, his sentences for those violations would also be more restrictive.  Considering the foregoing, Plaintiff has not stated an equal protection claim with respect to any of the disciplinary sentences of which he has complained. *See Flores v. Livingston*, 405 Fed.App'x. 931, *2 (5th Cir. 2010) (affirming a district court's dismissal of a claim of equal protection as frivolous where the plaintiff failed to allege that he was treated differently from similarly situated prisoners).

[42] To the extent Plaintiff alleges a second disciplinary report was filed against him for possession of the same cell phone, and that report was false, Plaintiff fails to state a claim because he ultimately received no punishment in connection with that disciplinary report.  R. Doc. 1-1, pp. 4-6.  Because Plaintiff experienced no adverse consequences, he cannot state a claim for retaliation for the allegedly false disciplinary report arising from the second cell phone violation.  *See Smith v. Hebert*, Civil Action No. 08-30, 2011 WL 4591076, *8 (M.D. La. Aug.26, 2011), *affirmed*, 533 Fed. Appx. 479 (5th Cir. 2013) ("Courts have held that the filing of a single, later-dismissed disciplinary charge against an inmate, even if taken with a retaliatory motive, is insufficient to qualify as more than *de minimis*."); *Ghosh v. McClure*, Civil Action No. 05-4122, 2007 WL 400648, *11–12 (S.D. Tex. Jan. 31, 2007).  *See also, Brightwell v.*

contraband, but complains that his sentence was harsher than the average sentence for other prisoners. Because possessing a cell phone is not a permissible activity, Plaintiff cannot show that but for the retaliatory motive, he would not have been disciplined. Regarding the watch, Plaintiff argues that his sentence was too harsh considering that watches are not contraband and that "if someone had given [him] the watch it was merely a situation of [him] getting an authorized item in an unauthorized way."[43] Again, Plaintiff does not argue that he was entitled to receive the watch at visitation. Likewise, Plaintiff admits he had another inmate place a phone call for him, also an impermissible activity, and was sentenced for same.[44] Accordingly, because the actions described were impermissible actions that Plaintiff does not deny, Plaintiff cannot prove that he would not have received disciplinary sentences but-for the alleged retaliatory animus.[45]

Similarly, Plaintiff complains that he was overcharged for simple escape when he should have been charged for "attempted simple escape."[46] Plaintiff does not contend that the report was false and rather, admits that he was, at least, attempting to escape.[47] What level of escape Plaintiff

---

*Lehman,* 637 F.3d 187, 194 (3rd Cir.2011) (same); *Bridges v. Gilbert,* 557 F.3d 541, 556 (7th Cir. 2009) (same); *Starr v. Dube,* 334 Fed. App'x. 341 (1st Cir.2009) (same).

[43] R. Doc. 1-1, p. 2.

[44] Plaintiff complains that he was not made aware of what rule he had violated, but such a claim sounds in due process rather than retaliation. Plaintiff cannot state a due process claim with respect to this disciplinary hearing because he was only sentenced to eight weeks loss of phone privileges, which is not so atypical as to give rise to a liberty interest. *See Zebrowski v. U.S. Federal Bureau of Prisons,* 558 Fed.App'x. 355, 359 (5th Cir. 2014) (temporary phone restrictions do not implicate due process concerns). *See also Burroughs v. Petrone,* 138 F.Supp.3d 182, 207 (N.D.N.Y. Oct. 15, 2015) (loss of telephone privileges is *de miminis* and insufficient to state a claim for retaliation).

[45] To the extent Plaintiff complains that he had to replace his watch (R. Doc. 1-1, p. 2) and is thus, asserting a lost property claim, such a claim is not cognizable in this Court. *See Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *Parratt v. Taylor,* 451 U.S. 527, 542 (1981). This is commonly referred to as the "Parratt/Hudson Doctrine." Procedural due process is not violated if an adequate post-deprivation remedy is available, and it has been held that Louisiana law provides ample post-deprivation remedies. *Marshall v. Norwood,* 741 F.2d 761, 764 (5th Cir. 1984). *See also, Batiste v. Lee,* No. 09-674, 2009 WL 2708111 (W.D. La. Aug. 26, 2009) (dismissing *pro se* prisoner's claims for deprivation of property as frivolous and for failing to state a claim based on the *Parratt/Hudson Doctrine*). Thus, Plaintiff does not have a claim for deprivation of his watch. For these same reasons, Plaintiff cannot state a claim for his lost property complained of in his amended complaint (R. Doc. 12), and that claim is also subject to dismissal.

[46] R. Doc. 1-1, p. 21.

[47] Though Plaintiff is attempting to use the "overcharging" to show retaliation, this claim ultimately sounds in due process, but Plaintiff is not entitled to have his prison disciplinary proceedings properly handled or favorably resolved as described below, and, as mentioned above, Plaintiff has already brought a due process claim regarding the

accomplished is a non-issue as he was engaged in an impermissible activity and was disciplined for that activity.[48]  Thus, he cannot show that but for retaliatory motive, the discipline would not have occurred.

To the extent Plaintiff alleges the incident described above regarding chemical spray was motivated by a retaliatory intent, such a claim also fails.  Plaintiff's allegations to support this claim of retaliation include that McDonald allegedly told Plaintiff "I'm going to show you about filing lawsuits."[49]  However, Plaintiff alleges McDonald was retaliating on behalf of Michael Vaughn.  Plaintiff has not made any allegations regarding the nature of the relationship between Vaughn and McDonald that would lead this Court to find any plausible retaliatory motive on behalf of McDonald.[50]

Further, to find retaliation would require the Court to find a conspiracy, as is the case for all of Plaintiff's retaliation claims and is another reason this claim must fail. As stated above, because Plaintiff alleges Defendants retaliated against him on behalf of another individual,[51] Plaintiff's allegation of retaliation relies on proving a conspiracy.[52]  A plaintiff who asserts

---

disciplinary hearing for simple escape, and that claim failed.  *Lavergne v. Stutes*, No. 17-1696 c/w 18-693, 2019 WL 4619963, *2-3 (M.D. La. Sept. 10, 2019).

[48] Plaintiff also appears to complain regarding the criminal prosecution for his attempted escape.  R. Doc. 1-1, p. 5. To the extent Plaintiff complains of the "Sheriff's office getting involved" (R. Doc. 1-1, p. 5), he fails to state any claim; it is the duty of law enforcement to investigate crimes, and Plaintiff admits that attempted simple escape is a crime.

[49] R. Doc. 1-1, p. 4.

[50] Plaintiff simply alleges that Vaughn is McDonald's boss.  *See Salter v. Nickerson*, No. 12-22, 2013 WL 866198, at *18 (E.D. Tex. Jan. 25, 2013) (finding an allegation of friendship too "tenuous and speculative…to give rise to a 'chronology from which retaliation may be plausibly inferred.'").  Additionally, Plaintiff has wholly failed to provide any specific facts to this Court that would be necessary for a retaliation claim, such as when lawsuits were filed and against whom.

[51] R. Doc. 1-1, p. 20.  Plaintiff alleges various Defendants retaliated against him on behalf of Michael Vaughn.  Though Plaintiff names Vaughn as a Defendant, he fails to allege any actions undertaken by Vaughn that constituted retaliation. Rather, all alleged retaliatory actions were perpetrated by other Defendants.  Moreover, as described below, Plaintiff being kept in "Death Row CCR" after he was found guilty of simple escape is in line with his original sentence.  Thus, it is impossible for Plaintiff to show that the disciplinary sentence has been excessive, as the disciplinary sentence is the same as the agreed upon sentence for Plaintiff's crimes per Plaintiff's plea agreement.

[52] *See Lewis v. Locicero*, No. 15-129, 2016 WL 831939, *4 (M.D. La. Feb. 29, 2016) ("It is well settled that allegations of a conspiracy between private and state actors requires more than conclusory statements, but requires further factual

conspiracy claims under civil rights statutes, such as § 1983, must plead the operative facts upon which their claim is based.[53]  "Bald allegations that a conspiracy existed are insufficient."[54] Plaintiff alleges that Defendants conspired to prevent Plaintiff from accessing the courts due to their relationship with Vaughn.  The allegation that Defendants were coworkers, or even friends, is not sufficient to support a claim that Defendants were conspiring to retaliate.[55]

To the extent Plaintiff essentially alleges he is being harassed for filing lawsuits and grievances, such a claim also fails.  The Fifth Circuit has held that an allegation that "harassment of [the plaintiff] intensified after he started filing grievances" was insufficient to show retaliation.[56]

For Plaintiff's final retaliation claim, he alleges that information regarding his prison disciplinary record was "leaked" in an effort to taint juries in his pending lawsuits and a pending criminal complaint against him.[57]  This allegation is wholly conclusory and also relies on Plaintiff showing a conspiracy, which he has not alleged sufficient facts to support.[58]  Accordingly, all of Plaintiff's claims of retaliation must fail.

---

enhancement to render the claim plausible. Plaintiff's conspiracy allegation is only supported by the allegation that Lockhart and Sheriff Ard are longtime friends, which is insufficient.") (internal quotation marks and citations omitted).

[53] *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987).

[54] *Id.*

[55] *See Kadri v. Haro*, No. 105-167, 2006 WL 3359426, *7 (N.D. Tex. Nov. 20, 2006) (finding the plaintiff's allegation of a close friendship was conclusory and insufficient to support a conspiracy allegation.); *Marbles v. Haynes*, No. 14-80, 2017 WL 3124180, *4 (E.D. Tex. June 22, 2017) (finding that conclusory allegations that defendants conspired to retaliate were insufficient to sustain a § 1983 action).

[56] *Reese v. Skinner*, 322 Fed.App'x 381, 383 (5th Cir. 2009), *citing Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

[57] R. Doc. 1-1, p. 12.  Plaintiff also alleges that the "leak" constitutes a separate equal protection violation but provides no facts in support thereof, so this claim is not considered.

[58] Moreover, Plaintiff retains no privacy interest in his prison disciplinary records.  *See Wright v. Garnish*, No. 94-697, 1994 WL 382495, *1 (N.D.N.Y July 19, 1994).

### D. Plaintiff's Claims Regarding "Mail Watch" Are Duplicative and Subject to Dismissal

Plaintiff also complains that some of his mail has been delayed and that he should no longer be on mail watch.[59]  A case is duplicative if it involves "the same series of events" and allegations of "many of the same facts as an earlier suit."[60]

This Court has previously dismissed Plaintiff's claims regarding a mail watch, stating as follows:

> [T]he Court finds no violation in the imposition of a "mail watch" restriction with regard to Plaintiff's mail in early 2014.  Pursuant to such "watch," prison officials apparently subjected Plaintiff's mail to greater scrutiny than normal, but there is no indication that Plaintiff's mail was censored or that he was prevented from sending or receiving mail as a result of this restriction.[61]

As this Court has already considered whether a "mail watch" violated Plaintiff's constitutional rights and has concluded that it does not, Plaintiff's claim regarding mail watch is duplicative and subject to dismissal.[62]  Even if the claim was not duplicative, it is still subject to dismissal for failure to state a claim because Plaintiff still does not allege that he was prevented from sending or receiving mail as a result of the "mail watch," and it does not appear that Plaintiff's mail was censored.[63]

---

[59] R. Doc. 1-1, pp. 10-11.

[60] *Bailey v. Johnson,* 846 F.2d 1019, 1021 (5th Cir. 1988).

[61] *LaVergne v. Cain*, No. 15-34, 2016 WL 8679227, at *11 (M.D. La. Aug. 19, 2016).

[62] Plaintiff also complains that his mail has been delayed, but again, this Court previously held that "mere delays in the transmission of Plaintiff's mail, without more," do not rise to the level of a constitutional violation.  *Id.* at *8.  Thus, to the extent that the claim of delay is not duplicative, this Court has previously explained why that claim fails, and that reasoning still stands. Further, the mere holding of mail by prison officials, which may result in delay of receipt by the inmate, is insufficient to show a violation of the First Amendment. *Pinson v. U.S. Dept. of Justice*, No. 12-1872, 2015 WL 13673660, *3 (D. D.C. July 28, 2015) (allegation that mail was held for days or weeks inadequate to demonstrate violation of the plaintiff's first amendment rights, unless the plaintiff can show a denial of right of access to the courts in connection therewith).  Plaintiff here does not allege his right to access the courts was infringed as a result of the delayed mail.

[63] Plaintiff filed an amended complaint (R. Doc. 5) complaining further regarding "mail watch."  The facts in the amended complaint fail for the same reasons as those in his original complaint.  Further, Plaintiff's new facts would also be subject to dismissal as unexhausted under the Prison Litigation Reform Act.  42 U.S.C. § 1997e.

Additionally, in another case involving Plaintiff, the Fifth Circuit affirmed that "LaVergne has not shown that the 'mail block' violated clearly established law."[64]  If a complete mail block does not violate clearly established law, then certainly, a mail watch cannot be offensive to the constitution.  Accordingly, this claim should be dismissed with prejudice.

### E. Plaintiff Has Not Stated A Claim Regarding LSP's Failure to Follow DOC Policy and Plaintiff Has Not Stated A Due Process Claim with Respect to Any of His Disciplinary Proceedings

In August 2018, Plaintiff was issued a disciplinary report and found guilty of a rules infraction for possession of a cellphone.[65]  Plaintiff alleges that he received "multiple punishments," including loss of visitation for three months,[66] that prescribing more than two punishments is against DOC policy and that he never received a response to his disciplinary appeal.[67]

First, violation of DOC's rules or policies alone does not establish the violation of a constitutional right.[68]  Thus, Plaintiff's claim that the imposition of "multiple punishments" for a rules infraction violates DOC policy fails to state a claim of constitutional dimension.  Further, as described below, the punishments imposed do not, in and of themselves, violate Plaintiff's constitutional rights.

Second, regarding Plaintiff's disciplinary appeal, an inmate does not have a constitutional right to have his prison disciplinary or administrative proceedings properly investigated, handled,

---

[64] *LaVergne v. Vaughn*, 797 Fed.App'x 869 (5th Cir. 2020) (affirming this Court's dismissal of Plaintiff's claim that a mail block infringed upon his constitutional rights).
[65] R. Doc. 1-1, p. 10.
[66] R. Doc. 1-1, p. 10.
[67] R. Doc. 1-1, p. 10.
[68] *Lewis v. Secretary of Public Safety and Corrections*, 870 F.3d 365, 369 (5th Cir. 2017) ("The LaDPSC and CCA internal rules and regulations do not alone create federally-protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right." (internal citations omitted)).

or favorably resolved,[69] and there is no procedural due process right inherent in such a claim.  As stated by the Fifth Circuit in *Geiger v. Jowers*:[70]

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction.  As he relies on legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.[71]

The United States Supreme Court has found that the procedures attendant to prison disciplinary proceedings do not implicate any constitutionally protected liberty interest unless the resulting punishment has subjected an inmate to an atypical and significant deprivation (evaluated in the context of prison life) in which the state might conceivably have created a liberty interest for the benefit of the inmate.[72]

Here, Plaintiff alleges he was sentenced to "multiple punishments."[73]  Plaintiff specifically complains that as a result of the August 2018 cell phone violation, he was sentenced to administrative segregation, kicked out of a college program, kicked out of the hobby shop, banned from the rodeo, "moved to the most violent part of the prison," and "placed in the field as [his] job."[74]  Plaintiff alleges these punishments were atypical.

---

[69] *Mahogany v. Miller,* 252 Fed.App'x. 593, 595 (5th Cir. 2007).

[70] 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance).

[71] *Id.* at 373-74.  This conclusion is equally applicable in the context of prison disciplinary proceedings.  *See, e.g., Sanchez v. Grounds,* No. 13-2, 2014 WL 1049164, at *2 (E.D. Tex. Mar. 14, 2014) (finding that an inmate's claim regarding a failure to conduct a "proper investigation" of a disciplinary charge "did not amount to a constitutional deprivation");  and *Jackson v. Mizell,* No. 09-3003, 2009 WL 1792774, at *7 n.11 (E.D. La. June 23, 2009) (noting that "the Court fails to see how a prisoner could ever state a cognizable claim alleging an inadequate disciplinary investigation").

[72] *Sandin v. Conner*, 515 U.S. 472, 486 (1995).  *See also Fisher v. Wilson*, 74 Fed.App'x. 301 (5th Cir. 2003) (affirming dismissal based on failure to state a claim where the plaintiff had not shown how placement in extended lockdown was an atypical or extraordinary incident in the context of prison life to trigger due process guarantees).

[73] R. Doc. 1-1, p. 10.

[74] R. Doc. 1-1, p. 4.

In order for any due process concern to arise, a protected liberty interest be implicated.[75] The custody status change imposed upon Plaintiff dues not implicate any constitutionally protected liberty interest.[76]    Plaintiff also has no constitutionally protected liberty interest in attending college,[77] being allowed access to the hobby shop,[78] attending rodeo,[79] or in his job assignment.[80] Plaintiff's final allegation regarding his quarters change consists of a conclusory allegation that he was "moved to the most violent part of the prison."[81]    Plaintiff has not alleged any facts in support of this contention, and thus, it should be dismissed.

Plaintiff also claims that LSP policy provides for the automatic "punishment" of loss of visitation for three months, which was imposed on him for the same August 2018 disciplinary report regarding the cell phone, and because the "punishment" is automatic and based on LSP policy, it is unconstitutional.[82]    Incarcerated prisoners do not retain any absolute rights of physical association; moreover, the Fifth Circuit has held "that for convicted prisoners '[v]isitation privileges are a matter subject to the discretion of prison officials.'"[83]    Further, in *Block v. Rutherford*,[84] the United States Supreme Court recognized that "[t]here are many justifications for denying contact visits entirely, rather than attempting the difficult task of establishing a program

---

[75] *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989).

[76] *Dickerson v .Cain*, 241 Fed.App'x. 193 (5th Cir. 2007) (holding that the plaintiff failed to show that placement in Camp J at LSP presents an atypical or significant hardship beyond the ordinary incidents of prison life).

[77] *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988) ("the state has no constitutional obligation to provide basic educational or vocational training to prisoners.").

[78] *See Anderson v. LeBlanc*, No. 13-541, 2013 WL 6328221, *2 (M.D. La. Dec. 4, 2013) (use of the hobby shop is a privilege, not a guaranteed right).

[79] *Reeves v. LeBlanc*, No. 13-586, 2014 WL 7150615, *2 (M.D. La. Dec. 15, 2014) (dismissing as frivolous a claim that the plaintiff's constitutional rights were violated by revoking his privilege of engaging in hobby craft and rodeo sales at the prison).

[80] *See, e.g.*, *Cotton v. Hargett*, 68 F.3d 465 (5th Cir. 1995) (a prisoner has no due process right to a particular job assignment).

[81] R. Doc. 1-1, p. 4.

[82] R. Doc. 1-1, p. 10.

[83] *Thorne v. Jones*, 765 F.2d 1270, 1273 (5th Cir. 1985) (quoting *Jones v. Diamond*, 636 F.2d 1364, 1376-77 (5th Cir. 1981).

[84] 468 U.S. 576, 587 (1984).

of limited visitation." The due process clause does not itself give rise to a liberty interest in visitation,[85] so Plaintiff must show that the state has created an enforceable liberty interest with respect to visitation for it to be protected by the due process clause.[86] Plaintiff has not alleged, nor does it appear, that Louisiana's laws create a liberty interest in visitation at the prisons and jails. Since there is no constitutional right to, or state-created interest in, visitation, a policy that provides for the automatic withdrawal of visitation privileges cannot violate the constitution.[87] Thus, this claim should be dismissed with prejudice for failure to state a claim.

To the extent Plaintiff attempted to state a due process claim regarding the disciplinary report for the watch he allegedly received while in visitation, Plaintiff also fails to state a due process claim because he was sentenced to only loss of visitation and loss of commissary. Plaintiff has no liberty interest in visitation, as explained above, and Plaintiff does not have a liberty interest in his ability to purchase items from the prison store.[88] Accordingly, Plaintiff cannot state a claim with respect to the disciplinary proceeding regarding the watch. Based upon the facts alleged, Plaintiff has not stated a cognizable due process claims with respect to the disciplinary proceedings complained of, and these claims should be dismissed.

---

[85] *Thompson*, 490 U.S. at 460-61 ("[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Id.* (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)) Further, "[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause." *Id.* at 461 (internal quotation marks and citations omitted)).
[86] *Id.* at 461.
[87] *See Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (holding that the plaintiff had no constitutional right to visitation privileges).
[88] *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) ("commissary and cell restrictions as punishment are in fact merely changes in the conditions of his confinement and do not implicate due process concerns.").

### F.  LSP's Tours Do Not Violate Plaintiff's Constitutional Rights

Plaintiff's complaints regarding the public tours given at LSP appear to invoke the Fourth and Eighth Amendments and are analyzed under both.[89]  To the extent Plaintiff suggests that his general privacy rights have been violated,[90] inmates have a substantially reduced right of privacy while incarcerated.[91] Specifically, inmates have no expectation of privacy in the prison's common areas[92] or in their cells.[93]  Not only do prisoners lack a right of privacy in their cells, but they also "have a minimal right to bodily privacy."[94]  Considering the minimal right of privacy afforded to prisoners, the lack of a reasonable expectation of privacy in Plaintiff's cell, and that the viewing occurred from areas outside Plaintiff's cell, any right to privacy was not violated, as such rights, basically, do not exist.[95]  Other courts have also found that it is a "natural aspect of prison life [] that guards, officials, and members of the public will periodically tour prison facilities and observe prisoners in their cells."[96]  Further, though there may be areas where some right of privacy is expected, such as within the lavatory, the cellblock is not such a special place.[97]  Accordingly, the

---

[89] Plaintiff also provided "background info" in this section of the Complaint where he discusses not being given a particular job assignment.  R. Doc. 1-1, p. 14.  To the extent Plaintiff has attempted to make a claim regarding not being assigned a particular job, such a claim fails.  *See, e.g., Cotton v. Hargett*, 68 F.3d 465 (5th Cir. 1995) (a prisoner has no constitutional right to a particular job assignment).  Further, as this incident occurred in October 2017, it would likely be prescribed as this case was filed in October 2019.

[90] *See* R. Doc. 1-1, pp. 13-14.

[91] *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984).

[92] *See U.S. v. Melancon*, No. 08-150, 2010 WL 324007, at *9 (E.D. La. Jan. 21, 2010) (finding no reasonable expectation of privacy in a prison's common area and noting "[t]his Court is not persuaded to expand the scope of the severely diminished (if not extinct) privacy rights retained by inmates…").

[93] *See Hudson*, 468 U.S. at 527-28 ("[a] right or privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional and internal order.").  *See also Allen v. Fuselier*, 273 F.3d 393, 393 (5th Cir. 2001) ("an inmate has no privacy interest in his cell or the personal property contained therein.") (citations omitted); *Ordaz v. Martin*, 5 F.3d 529, *5 (5th Cir. 1993).  The privacy right in the cell is among the rights ceded by a convicted felon.  *U.S. v. Ward*, 561 F.3d 414, 417 (5th Cir. 2009).

[94] *Garrett v. Thaler*, 560 Fed. App'x. 375, 380 (5th Cir. 2014) (citing *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002)).

[95] *Ordaz*, 5 F.3d at *5 ("a prisoner has no reasonable expectation of privacy in the 'curtilage' surrounding his prison cell.").

[96] *Price v. Chicago Magazine*, No. 86-8161, 1988 WL 61170, *4 (N.D. Ill. June 1, 1988).

[97] *Id.*

16

tour that allowed the public to view Plaintiff's cell did not violate what little right to privacy he may maintain as an incarcerated individual.

To the extent Plaintiff has insinuated that the public tours constitute cruel and unusual punishment, such a claim also fails.  Plaintiff complains that the tours that take place at LSP are "atypical and dehumanizing."[98]  The nature of this claim is that Plaintiff's conditions of confinement, *i.e.*, the exposure to the public, violate the constitution.  "The Eighth Amendment affords prisoners protection against the 'wanton and unnecessary infliction of physical pain,' as well as against exposure to egregious physical conditions that deprive them of basic human needs."[99]  The tours provided by the prison do not cause infliction of physical pain upon Plaintiff, nor do they amount to egregious physical conditions that deprive Plaintiff of a basic human need.[100]

Moreover, there does not appear to be any support for the contention that public tours of prisons violate the constitution.  In the cases in which the Supreme Court has considered public access to prisons, it has not condemned such access.[101]  To the contrary, it appears that public touring of prisons is a well-accepted practice. The Supreme Court has recognized public tours of prisons as a necessary activity[102] because the conditions of jails and prisons are "clearly matters

---

[98] R. Doc. 1-1, p. 13.

[99] *Ordaz*, 5 F.3d, at *5 (lingering of female guards outside an inmate's prison cell while he was masturbating did not rise to the level of cruel and unusual punishment because masturbation does not qualify as a basic human need or a fundamental right to be protected under the penumbral right to privacy).

[100] To the extent that visitors have made remarks that have offended Plaintiff, such does not rise to the level of a constitutional violation because they are not state actors.  R. Doc. 1-1, pp. 15-16 (Plaintiff complains that individuals on tours have made comments to him such as "your [sic] evil."  Plaintiff also specifically complains of a school tour in which the students stood by his cell "pointing, snickering, whispering," and a tour of elderly individuals, including at least two catholic nuns, who allegedly stood by Plaintiff's cell for longer than he wished.).  Even if state actors themselves say offensive things to an inmate, this is insufficient to state a claim of constitutional dimension.  *See Orange v. Ellis*, 348 Fed. App'x. 69, 72 (5th Cir. 2009) (citing *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)) ("Mere words are not sufficient to support a Section 1983 claim.").  Accordingly, the fact that members of the public on tour may have said things to Plaintiff that upset him is insufficient to state a claim under § 1983.

[101] *See, e.g.*, *Pell v. Procunier*, 417 U.S. 817, 830 n. 7 (1974); *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978).

[102] *Pell*, 417 U.S. at 830 n. 7 ("As The Chief Justice has commented, we cannot 'continue . . . to brush under the rug the problems of those who are found guilty and subject to criminal sentence. . . . It is a melancholy truth that it has

'of great public importance.'"[103] Penal institutions require large amounts of public funds, and each person who is placed in prison becomes, in effect, a ward of the state; thus, information regarding prison conditions is of public importance.[104] Though the constitution does not compel prisons to allow public access, it also does not prohibit prisons from allowing public access.[105] Accordingly, Plaintiff has failed to state a claim of constitutional dimension regarding the tours of LSP.[106]

### G. Plaintiff Has Failed to State a Conditions of Confinement Claim

Plaintiff makes multiple separate claims regarding the conditions of his confinement, each of which will be discussed in turn. The conditions under which a prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits the unnecessary and wanton infliction of pain.[107] An inmate must establish two elements—one objective, one subjective—to prevail on a conditions of confinement claim.[108] First, he must show that the relevant official denied him "the minimal civilized measure of life's necessities" and exposed him "to a substantial risk of serious harm."[109] The "alleged deprivation" must be "objectively serious."[110] Second, the prisoner must show "that the official possessed a subjectively culpable state of mind in that he exhibited deliberate indifference" to the risk of harm.[111] "Deliberate indifference is an extremely high

---

taken the tragic prison outbreaks of the past three years to focus widespread public attention on this problem.' Burger, Our Options are Limited, 18 Vill.L.Rev. 165, 167 (1972). Along the same lines, The Chief Justice has correctly observed that '(i)f we want prisoners to change, public attitudes toward prisoners and ex-prisoners must change. . . . A visit to most prisons will make you a zealot for prison reform.' W. Burger, For Whom the Bell Tolls, reprinted at 25 Record of N.Y.C.B.A. (Supp.) 14, 20, 21 (1970)). *See also Houchins v. KQED, Inc.*, 438 U.S. 1 (1978).
[103] *Houchins*, 438 U.S. at 8 (citing *Pell*, 417 U.S. at 830 n. 7).
[104] *Houchins*, 438 U.S. at 13.
[105] *Id.* at 13-14. Plaintiff has stated he is making an equal protection claim because tours are not provided of other areas of the prison. Plaintiff has not provided any support for such an equal protection claim, and the case law clearly indicates that governmental authorities are in control of what areas of the prisons they allow the public or media to gain access to. *Cf. Houchins*, 438 U.S. at 13-14. Similarly, Plaintiff has stated that the tours violate his right to due process, but there are no facts alleged that would support a potential due process claim as to this complaint.
[106] *See Gibson v. Hilton*, No. 15-1230, 2015 WL 5023300 (W.D. La. Aug. 24, 2015) (dismissing as frivolous a claim that the inmate plaintiff suffered embarrassment when a tour group of youth stopped at his cell).
[107] *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).
[108] *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019).
[109] *Id.* (quotation marks omitted).
[110] *Id.*
[111] *Id.* (citations and quotation marks omitted).

standard to meet."[112]  "A prison official displays deliberate indifference only if he (1) knows that inmates face a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable measures to abate it."[113]  This inquiry is "subject to demonstration in the usual ways, including inference from circumstantial evidence."[114]  A "factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."[115]

The Eighth Amendment "does not mandate comfortable prisons, but neither does it permit inhumane ones."[116]  At a minimum, prison officials "must provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care."[117]  They cannot deprive prisoners of the "basic elements of hygiene" or the "minimal civilized measure of life's necessities."[118]  Prison conditions cannot inflict "wanton and unnecessary" pain.[119]

Plaintiff's first claim regarding conditions of his confinement arise from punishments that were imposed upon him resulting from the cell phone violation, discussed above; attempted simple escape, which occurred in October 2018; and having another inmate place a call on his behalf.[120]  According to Plaintiff, the punishments imposed for his various rules infractions worked in tandem to result in cruel and unusual punishment because Plaintiff was left in solitary confinement "with no possible contact to the outside world."[121]  The punishments, which Plaintiff had to endure

---

[112] *Id.*, *quoting Domino*, 239 F.3d at 756.

[113] *Id.* (quotation marks omitted).

[114] *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004).

[115] *Id.*

[116] *Farmer*, 511 U.S. at 832 (internal quotation marks and citations omitted).

[117] *Id.*

[118] *Palmer v. Johnson*, 193 F.3d 346, 352-53 (5th Cir. 1999) (quotation marks omitted).

[119] *Id.* at 351.

[120] R. Doc. 1-1, p. 1.  Plaintiff alleges that on October 15, 2018, he attempted to escape LSP but was captured and placed in "CCR," R. Doc. 1-1, p. 1.  While in CCR, Plaintiff asked another inmate, Terry Smith, to make a phone call to Plaintiff's "then girlfriend" to "let herself [sic] and [his] family know [he] was OK."  *Id.*  The phone call was overheard, and disciplinary reports were issued both Terry Smith and Plaintiff.  As a result, Plaintiff was sentenced to eight weeks loss of phone privileges.  R. Doc. 1-1, p. 1.

[121] R. Doc. 1-1, p. 11.

simultaneously included loss of visitation and phone privileges, loss of commissary privileges, and solitary confinement.[122]    As discussed above, visitation is a privilege, which Plaintiff has no protected interest in; similarly, use of a phone in prison is a privilege, and the withdrawal of these privileges is not an atypical, significant deprivation that might rise to the level of a constitutional concern.[123]    Further, even considering that Plaintiff was unable to contact the outside world for up to five weeks, he does not describe an "extreme deprivation."[124]    For example, Plaintiff does not allege that he lacked interaction with others in the facility during this time period.[125]    Plaintiff also complains generally, that, when his disciplinary sentences expired, he still did not have 24 hour per day access to emails and phone calls; he also fails to state a claim in this regard.  Inmates are not entitled to unlimited telephone use.[126]    Similarly, inmates have no constitutional right to email access.[127]    Thus, Plaintiff has not stated a claim as a result of his limits in communicating using these forms of communication.  Accordingly, Plaintiff has failed to state a conditions of

---

[122] *See Scott v. Moore*, 114 F.3d 51, 53 n. 2 (5th Cir. 1997) (citing *Collazo-Leon v. United States Bureau of Prisons*, 51 F.3d 315 (1st Cir. 1995) (case involving disciplinary segregation and denial of telephone and visitation privileges properly classified as a conditions of confinement case).

[123] *See Magee v. Crowe*, 2010 WL 1751575 at *9 (E.D. La. April 1, 2010) (punishment consisting of loss of commissary and telephone privileges does not rise to the level of a constitutional violation). *See also Smith v. Tanner*, No. 18-3719, 2018 WL 6204617, at *10 (E.D. La. Nov. 5, 2018) (collecting cases noting prisoners have no right to unlimited telephone use.  Instead a prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution.  Holding that withdrawal of privileges such as canteen, telephone, outdoor recreation, and mattress restrictions, without any atypical, significant deprivation does not result in a violation of due process or other constitutional rights).

[124] *See Price v. Johnson*, No. 20-72, 2020 WL 1312400, at *10 (W.D. La. 2020).

[125] *See id.* (finding that the alleged deprivation of social interaction was not sufficiently extreme to state a claim).

[126] *See Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982).  *See also Smith*, 2018 WL 6204617 at *10 (collecting cases noting prisoners have no right to unlimited telephone use).

[127] *See, e.g.*, *Bristow v. Amber*, No. 12-412, 2012 WL 1963577, at *2-3 (S.D. Ohio May 31, 2012) (prisoners do not have a First Amendment right to access email); *Grayson v. Federal Bureau of Prisons*, No. 11-2, 2012 WL 380426, at *3 (N.D. W. Va. Feb. 6, 2012) ("[P]risoners have no First Amendment constitutional right to access email."); *Rueb v. Zavaras*, No.09-2817, 2011 WL 839320, at *6 (D. Colo. Mar. 7, 2011) ("[I]nmates have no established First Amendment right to access email."); *Holloway v. Magness*, No. 07-88, 2011 WL 204891, at *7 (E.D. Ark. Jan. 21, 2011) ("[A]ssuming that the free speech clause of the First Amendment requires prisons to permit communication between prisoners and persons outside the prison, it does not follow that the First Amendment requires that the government provide telephones, videoconferencing, email, or any of the other marvelous forms of technology that allow instantaneous communication across geographical distances; the First Amendment is a limit on the exercise of governmental power, not a source of positive obligation on the part of the government.").

confinement claim regarding the lack of interaction with persons outside LSP he experienced as a result of disciplinary charges and has failed to state a claim regarding the general limitations placed on his communications with the outside world.[128]  Plaintiff also cannot state a claim regarding restrictions to his commissary privileges, as these are privileges, not rights, and such restrictions do not deprive Plaintiff of any basic measure of life's necessities.[129]  Plaintiff also cannot state a claim for confinement of a solitary nature, as more fully explained below.

Plaintiff generally claims that he is the "only prisoner in the entire state of Louisiana not sentenced to death, who has been ordered to live at death row,"[130] and Plaintiff complains that he does not have air conditioning.[131]  Other conditions complained of by Plaintiff include the following: (1) he is housed in a single-man cell 23 hours per day; (2) he is given recreation three times per week for one hour per day; (3) Plaintiff is only allowed two visits per month, which visits must be pre-approved; (4) Plaintiff is placed in restraints when transported anywhere within the prison; (5) Plaintiff is not allowed to attend church services;[132] and (6) Plaintiff is not allowed to use emails like the other prisoners and is only allowed phone calls when he is out of his cell.[133]

To the extent Plaintiff's complaint regarding being housed at death row is a complaint regarding the solitary nature of his confinement, this Court has previously considered and rejected

---

[128] To the extent Plaintiff intended to make a claim regarding lack of communication with the outside world under the First Amendment, the claim still fails.  Though prisoners have a First Amendment right to communicate with the outside world (see Thornburgh v. Abbott, 490 U.S. 401, 411-12 (1989)), this right is not unlimited.  As discussed in connection with Plaintiff's claims regarding phone and email privileges, prisoners must only be provided with the means of communication.  Here, Plaintiff was able to communicate via mail, and the fact that some of his mail was delayed does not rise to the level of a constitutional violation for the reasons explained above.

[129] See Gardner v. Thompkins, 464 F.2d 1031, 1031-32 (5th Cir. 1972) (denial of canteen privileges not a claim of constitutional proportions).

[130] R. Doc. 1-1, p. 23.

[131] R. Doc. 1-1, p. 24.

[132] This claim is discussed below in relation to Plaintiff's claims regarding infringement of his religious liberties.

[133] R. Doc. 1-1, pp. 20-22.  This claim was discussed above in relation to Plaintiff's other complaints regarding deprivation of communication.

this claim.[134]  Accordingly, this claim should be dismissed as duplicative.[135]  Further, Plaintiff

does not have any right to be housed in any particular section of the prison, so to the extent his

complaint is that his sentence is being carried out in a particular section of the prison, namely death

row, Plaintiff also fails to state a claim.[136]

Plaintiff's listed complaints regarding being housed in a single-man cell 23 hours per day

and recreation three times per week for one hour per day are part and parcel of his plea agreement

to be housed in solitary confinement.  Though this claim is also likely barred by *Heck* due to its

relationship to the plea agreement and for the same reasons as previously stated by this Court,[137]

---

[134] *Lavergne v. Stutes*, No. 17-1696 c/w 18-693, 2019 WL 4619963, *2-3 (M.D. La. Sept. 10, 2019) (finding that Plaintiff's complaints regarding his confinement, which was determined via plea agreement, are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994)).  Plaintiff does not allege that since this Court last considered this claim the sentence has been reversed, expunged, declared invalid, or called into question.  Thus, because the Court has already considered this exact claim, it is duplicative and subject to dismissal.  Plaintiff filed an amended complaint on this issue (R. Doc. 10), but the facts alleged do not save Plaintiff's claim.  Plaintiff's amended complaint details new rules regarding being held in solitary confinement, but as described herein, Plaintiff's sentence is unique as by virtue of his original sentence he is to be held in solitary confinement.  Thus, these new rules do not have any impact on Plaintiff.  Further, Plaintiff clearly has not yet exhausted the claims in R. Doc. 10, and they are subject to dismissal pursuant to 42 U.S.C. § 1997e.

[135] Plaintiff filed two amended complaints (R. Docs. 9 & 14) that relate to this claim.  Plaintiff states in these amendments that Vannoy stated "That isn't enough time" with respect to Plaintiff's time in solitary confinement, and that Vannoy has admitted Plaintiff's plea agreement calls for Plaintiff to be held in solitary confinement and that with respect to this, Vannoy opined that such a sentence is worse than being held in CCR.  Plaintiff alleges his plea agreement violates Louisiana statutory law.  These amendments are irrelevant as Plaintiff cannot state a claim regarding the solitary nature of his confinement because it is part of his original sentence, which has not been reversed, expunged, declared invalid, or called into question.

[136] *See Tucker v. Royce*, Nos. 09-35, 09-106, & 10-04; 2011 WL 541116, *6 (N.D. Ms. Feb. 8, 2011) (dismissing claim that particular housing assignment constituted cruel and unusual punishment and holding that "[p]risoner classification is a matter squarely within the broad discretion of prison officials, free from judicial intervention except in extreme circumstances." *Id.* (internal quotation marks and citations omitted)).  To the extent Plaintiff complains that he was, at some point in time, released from solitary confinement on death row but then returned to that confinement as a result of disciplinary sanctions, his claim still fails.  Sanctions which may be imposed as a result of disciplinary cases, including various terms of commissary, recreation, and cell restriction, do not implicate concerns that are protected by the Due Process Clause.  *Madison*, 104 F.3d at 768 ("commissary and cell restrictions as punishment are in fact merely changes in the conditions of his confinement and do not implicate due process concerns.").  Moreover, an inmate has neither a protected property nor liberty interest in his custodial classification.  *Moody v. Baker,* 857 F.2d 256, 257–58 (5th Cir.1988) (internal citations omitted).  Plaintiff's placement on death row is nothing more than an issue of custodial classification because Plaintiff was sentenced to life in solitary confinement.  The Due Process clause is only implicated "when state action *exceeds* the sentence in such an unexpected way as to give rise to protection by the Due Process Clause."  *Stevens v. Cain*, No. 14-204, 2017 WL 2389978, at *6 (M.D. La. May 23, 2017) (emphasis added).  Plaintiff's placement in solitary confinement does not exceed the sentence; rather, this is exactly the sentence that was imposed on Plaintiff pursuant to his plea agreement.  Plaintiff is warned that his continued attempts to invalidate his plea agreement and sentence through § 1983 claims may result in sanctions.

[137] *Lavergne v. Stutes*, Civil Action No.17-1696 c/w 18-693, 2019 WL 4619963, *2-3 (M.D. La. Sept. 10, 2019).

even if considered separately, these complaints fail to state a claim.  The complained of conditions are general conditions of solitary confinement, and solitary confinement is not *per se* cruel and unusual.[138]  Regardless of the constitutionality of solitary confinement, even considering that Plaintiff is housed for 23 hours per day in a single-man cell and that he is only afforded outdoor recreation three days per week for one hour per day, Plaintiff still has not stated a claim.

Confinement to a cell for 23 hours per day does not rise to the level of a constitutional violation.[139]  Thus, Plaintiff has not stated a claim regarding the length of time he occupies his cell per day.  Further, Plaintiff has not stated a claim regarding the amount of outdoor recreation he receives.  The Fifth Circuit has evaluated claims regrading deprivation of exercise on a case-by-case basis using the following criteria: (1) the size of the inmate's cell; (2) the amount of time the inmate spends locked in his cell each day; and (3) the overall duration of the inmate's confinement.[140]  "[P]risoners have no absolute constitutional right to outdoor recreation, so long as some form of exercise is permitted, or, the conditions of confinement, when viewed as a whole, are not violative of the Eighth Amendment…. Even severe restrictions on or complete denials of outdoor recreation are not prohibited by the Constitution."[141]  Plaintiff is provided with outdoor exercise three days per week and has failed to provide any facts indicating that the limit on the amount of outdoor exercise he receives has had any detrimental effects to his health.[142]  Moreover,

---

[138] *Novak v. Beto*, 453 F.2d 661, 665 (5th Cir. 1971).

[139] *Milton v. Gusman*, No. 10-3309, 2010 WL 5376117 at *1 (E.D. La. Dec. 20, 2010) (citing *Argue v. Hofmeyer*, 80 Fed. App'x. 427, 429 (6th Cir. 2003) (holding that confinement for 23 hours per day, Monday through Friday is not unconstitutional because it does not impose an atypical and significant hardship); and *Hill v. Pugh*, 75 Fed.App'x. 715, 721 (10th Cir. 2003) (holding that confinement for 23 hours per day five days a week and 24 hours per day on the remaining two days is not unconstitutional because it shows neither an unquestioned and serious deprivation of basic human needs nor intolerable or shocking conditions)).

[140] *Hewitt v. Henderson,* 271 Fed. App'x. 426, 428 (5th Cir. 2008).

[141] *Wingo v. Johnson*, No. 12-14, 2012 WL 1390684, at *6 (W.D. La. March 21, 2012) (internal quotation marks and citations omitted).

[142] *See, Young v. Gusman*, No. 12-2877, 2013 WL 4648478, at *12 (E.D. La. Aug. 29, 2013) (dismissing a claim regarding limited outdoor exercise because the plaintiff had not sufficiently shown that the limited outdoor exercise had caused any serious health hazard or deleterious effect to his health).

the Fifth Circuit has found that one hour of outdoor exercise three days per week is constitutionally sufficient.[143]  Thus, Plaintiff has failed to state a claim of constitutional dimension with respect to his complaints of being in a cell 23 hours per day and enjoying three days of outdoor recreation per week for one hour per day.

Plaintiff has also failed to state a claim regarding the lack of air conditioning where he is housed.  Although exposure to extreme heat is actionable under certain circumstances, Plaintiff's allegations in this case fall short of what is required to establish a constitutional violation, as Plaintiff does not allege any facts to indicate extreme heat is present where he is housed.  Even if Plaintiff had alleged extreme heat, his claims would fail.  For example, in *Johnson v. Texas Board of Criminal Justice*,[144] the United States Court of Appeal for the Fifth Circuit upheld a dismissal, as frivolous, of an inmate plaintiff's claims, finding that his allegations regarding extreme heat were "not sufficient to state a constitutional claim" because although he alleged that temperatures were "sometimes uncomfortably hot, he did not allege that he suffered from any heat-related injuries despite being subjected to these conditions numerous times."[145]  Similarly, it has been held that purely conclusory allegations of excessive heat and inadequate ventilation, without more, fail to implicate a federal constitutional right.[146]  In the instant matter, Plaintiff only provides the

---

[143] *See McBride v. Bremer*, 990 F.2d 1253, *2 (5th Cir. 1993) ("providing one hour of outdoor exercise three days a week and permit[ting] inmates to move to the dayroom or stay in the cell for the majority of the day" is constitutionally sufficient).

[144] 281 Fed. App'x. 319 (5th Cir. 2008).

[145] *Id.* at 321.  *See also, Woods v. Edwards,* 51 F.3d 577, 581 (5th Cir. 1995) (upholding summary judgment in favor of the defendants where the inmate plaintiff alleged that excessive heat at Camp J at LSP aggravated his medical condition but where he "failed to present medical evidence of any significance" to support that assertion); *Ventry v. Gusman*, No. 11-2989, 2012 WL 1405862, *7 (E.D. La. March 29, 2012) (dismissing as frivolous an inmate's claim regarding uncomfortably hot conditions of confinement where his allegations "[fell] short of what is required to establish a constitutional violation" and where his claim regarding the aggravation of his medical condition was "speculative at best"); *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, *6 (E.D. La. March 29, 2012) (same).

[146] *See Johnson v. Thaler*, CA No. 99-20222, 1999 WL 1131941, *1 (5th Cir. Nov. 12, 1999) (concluding that the inmate plaintiffs' conclusory "allegations of inadequate ventilation and excessive heat do not entitle them to relief under 42 U.S.C. § 1983"); *Parker v. Smith*, No. 93-5542, 1994 WL 198944, *2 (5th Cir. May 6, 1994) (upholding the frivolous dismissal of a plaintiff's claim that "the ventilation system in the Smith County jail [was] inadequate").

24

conclusory allegation that he does not have air conditioning; this is insufficient to state a claim of constitutional dimension.

Next, Plaintiff complains that he is allowed only two visits per month, and these visits must be pre-approved. Since Plaintiff has no right to visitation at all, as explained above, he cannot state a claim regarding limitations on visitation.[147] This claim lacks merit.[148]

Similarly, Plaintiff cannot state a claim regarding the fact that he is placed in restraints when he is transported about the prison. "[U]se of restraints of prisoners in matters of security [has been] found to fall within the discretion of prison officials."[149] Moreover, "the jurisprudence is uniform that reasonable steps taken to enforce security needs in a prison do not violate a prisoner's constitutional rights."[150] The use of restraints alone does not violate the constitution, and Plaintiff has not alleged any aggravating factors so as to state a claim of constitutional dimension.[151] Thus, Plaintiff fails to state a claim in this regard.

---

[147] *See Overton v. Bazzetta*, 539 U.S. 126 (2003) (Prison regulation that subjected inmates with two substance-abuse violations to ban of at least two years on visitation with those outside the prison not cruel and unusual punishment); *Martin v. Scott*, 156 F.3d 578, 579 (5th Cir. 1998) (finding no claim where a prisoner claimed that officials limited his visitation time); *Lair v. Purdy*, 188 Fed. App'x. 250 (5th Cir. 2006) (inmate's claim that he was subjected to harsher visitation restrictions than other inmates in violation of his rights under the First Amendment was frivolous and failed to state a claim upon which relief may be granted).

[148] *See, Price*, 2020 WL 1312400 (dismissing as frivolous Plaintiff's complaint based on allegations that he could only visit on the first and third Sunday of the month behind a glass).

[149] *Burnette v. Phelps*, 621 F.Supp. 1157, 1161 (M.D. La. Nov. 18, 1985) (citing *Fulford v. King*, 692 F.2d 11, 13 (5th Cir. 1982).

[150] *Id.* (citing *Olgin v. Darnell*, 664 F.2d 107 (5th Cir. 1981); *McFadden v. Lucas*, 713 F.2d 143 (5th Cir.), *cert denied* 464 U.S. 998 (1983)).

[151] *See, e.g.*, *McLaughlin v. Tanner*, No. 13-6563, 2014 WL 2807312, *2 (E.D. La. June 3, 2014) (requirement that extended lockdown inmates be fully restrained during exercise constitutional); *Tucker v. Royce*, Nos. 09-35, 09-106, 10-04; 2011 WL 541116, *6 (N.D. Miss. Feb. 8, 2011) (complaint that certain restraints were used to move the plaintiff about the prison dismissed).

Generally, only more extreme deprivations rise to the level of a constitutional deprivation.[152] Even considering the conditions complained of by Plaintiff together, they do not rise to the level of a constitutional violation.[153]

### H. Disallowing Attendance at Any Religious Services States a Claim, But Plaintiff's Other Claims Regarding Religion and Education Should Be Dismissed

Plaintiff asserts that until August 2018, he was attending the prison Baptist seminary, but as punishment for August 2018 cell phone incident, he was removed from the school.[154] Similarly, he complains that after his removal from the school, he was unable to obtain grades for certain classes to continue his studies and obtain a "minster degree" by mail.[155] It is well-settled that a prisoner has no constitutional right to participate in an educational or rehabilitative program.[156] Plaintiff had no right to attend the educational program from which he was removed. Similarly, to the extent Plaintiff had difficulty enrolling in other classes, he does not have a constitutional

---

[152] *See Novak*, 453 F.2d at 665 (collecting cases) (*Wright v. McMann*, 387 F.2d 519 (2d Cir. 1967) (cell was encrusted with excrement and the plaintiff was forced to sleep on the concrete floor, naked, with the windows open throughout subfreezing weather, with no soup, towels, or toilet paper) *Hancock v. Avery*, 301 F.Supp. 786 (M.D. Tenn. 1969) (hole for waste, flushed irregularly by guard, no soap, towel or toilet paper, prisoner slept naked on floor); *Jordan v. Fitzharris*, 257 F.Supp. 674 (N.D. Cal. 1966) (cells not cleaned regularly, prisoner had no means to clean himself, a hole for receiving bodily wastes with no flushing mechanism)). In *Novak*, the Fifth Circuit noted that cases that challenge conditions of confinement have a "common thread," namely, "the deprivation of basic elements of hygiene." *See also Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) ("[F]ilthy, unsanitary" cells can violate the Eighth Amendment."). Plaintiff has not alleged any facts to indicate he is being deprived of the basic elements of hygiene or of any other minimal civilized measure of life's necessities.

[153] To the extent Plaintiff has attempted to bring an equal protection claim on the bases of the conditions of his confinement as compared to other prisoners, such a claim fails because, as explained in n. 36, due to Plaintiff's unique custodial classification resulting from his unique plea agreement, Plaintiff is not similarly situated to any of the other inmates he has described, and as stated above, "[w]hen classification is a necessary part of prison security, it does not amount to denial of equal protection of the laws." *Lopez*, 692 F.2d at 17.

[154] R. Doc. 1-1, p. 18. Note, though Plaintiff has framed this as an issue involving the First Amendment and the RLUIPA, it is a due process claim, which is discussed above in connection with Plaintiff's complaints regarding disciplinary proceedings.

[155] R. Doc. 1-1, p. 19.

[156] *See Moody v. Daggett*, 429 U.S. 78, 88, n. 9 (1976).

right to be enrolled in such classes.[157] Thus, he cannot state a claim based on his removal from the program.

However, with respect to Plaintiff's allegation that he is not allowed to attend any church services, he has stated a claim.[158] It is well-established that prisoners must be accorded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment.[159] However, conflicts have arisen between prisoners' exercise of this right and genuine concerns of day-to-day prison administration. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."[160] The factors examined to determine the reasonableness of prison regulations are as follows: (1) whether there is a rational relationship between the regulation and the legitimate government interest asserted; (2) whether the inmates have alternative means to exercise the right; (3) courts must consider the impact on guards, other inmates, and the allocation of prison resources that would result from accommodating the asserted right; (4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest.[161] Courts must balance the inmates' right to free exercise of religion with the interest of prison officials charged with complex duties arising from administration of the penal system. Prison officials are afforded great deference in carrying out their complex duties.[162]

---

[157] *Carroll v. LeBlanc*, No. 17-426, 2020 WL 1428226, at *2 (W.D. La. Jan. 27, 2020) (dismissing as frivolous a plaintiff's claim that a correctional institution had no religion classes on the basis that the state has no constitutional obligation to provide basic educational or vocational training to prisoners).

[158] R. Doc. 1-1, pp. 18; 22.

[159] *Cruz v. Beto*, 405 U.S. 319 (1972).

[160] *Turner v. Safley*, 482 U.S. 78, 89 (1987).

[161] *Id.*, at 89-91.

[162] *O'Lone v. Shabazz*, 482 U.S. 342, 349 (1987). In *O'Lone,* the Supreme Court faced a situation in which policies adopted by prison officials prevented Muslim prisoners from attending Jum'ah services, and the Court held that it would not substitute its judgment on difficult and sensitive matters of institutional administration for the judgment of those charged with the formidable task of running a prison. *Id.* at 353.

The *Turner* factors are not weighed equally.[163] The first factor is controlling, and the other factors merely help a court determine if the connection is logical.[164] The Fifth Circuit has held that "[s]ignificant restrictions on [attendance of religious services] must have some relation to legitimate penological interests."[165] Based upon Plaintiff's allegations, read in the light most favorable to him, he has stated a claim with respect to being prevented from attending any religious services.[166] Plaintiff alleges that others who are confined to Death Row are allowed to attend weekly religious services,[167] so he has at least alleged facts to suggest that there is no legitimate penological interest for prohibiting Plaintiff's attendance at these religious services. Accordingly, Plaintiff's claim regarding his exclusion from religious services against Vannoy, LaMartinaire, Delaney, Cruze, Oubre, Sharky, and McDonald arising from the First Amendment and the Religious Land Use and Institutionalized Persons Act[168] ("RLUIPA") should survive.[169]

However, to the extent Plaintiff has attempted to allege RLUIPA claims against these Defendants in their individual capacities, he cannot do so. RLUIPA does not permit a claim against individual defendants in their individual capacities.[170] The statute expressly states that RLUIPA's

---

[163] *Mayfield v. Texas Dep't. of Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008).

[164] *Scott v. Mississippi Dept. of Corrections*, 961 F.2d 77, 81 (5th Cir. 1982).

[165] *Rose v. Woods*, 95 F.3d 53, *1 (5th Cir. 1996) (citing *Muhammad v. Lynaugh*, 966 F.2d 901, 902 (5th Cir. 1992).

[166] Plaintiff has stated this claim under the First Amendment and under RLUIPA, as RLUIPA places a heavier burden than the First Amendment on prison officials to justify a substantial burden on an inmate's religious exercise. *See Stevens v. Cain*, No. 14-204, 2017 WL 2389978, at *4 (M.D. La. May 23, 2017) ("RLUIPA imposes a higher burden than does the First Amendment."); *Legate v. Stephens*, No. 13-148, 2014 WL 3587981, at *17 (S.D. Tex. June 6, 2014) citing *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) ("RLUIPA imposes a more stringent standard than that of the First Amendment."). Though a separate analysis regarding RLUIPA may be required in the future, it is unnecessary for screening purposes.

[167] R. Doc. 1-1, p. 22.

[168] The RLUIPA states that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution…unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Though Plaintiff states his claim is under RLUIPA only, the Court is required to interpret *pro se* pleadings liberally, so the undersigned interprets Plaintiff's claim as both under the First Amendment and RLUIPA.

[169] *See Young v. Ericksen*, 758 F.Supp. 777, 784-85 (E.D. Wis. Dec. 20, 2010) (on summary judgment, material issues of fact existed precluding summary judgment on the plaintiff's claim under RLUIPA that he was not allowed to attend religious services, despite fact that the plaintiff was in segregation for his own safety).

[170] *See* 42 U.S.C. § 2000cc-1.

scope is limited to a "program or activity that receives Federal financial assistance."[171]  In this case, the recipient of federal funds is the Louisiana Department of Public Safety and Corrections, not any individual defendant.  Thus, because no individual defendant receives federal financial assistance as that term is used in the statute, Plaintiff cannot maintain a RLUIPA claim against a defendant in his or her individual capacity.[172] Additionally, Plaintiff  only seeks injunctive relief with respect to these claims arising under the First Amendment and RLUIPA.[173]

## RECOMMENDATION

IT IS RECOMMENDED that all claims and Defendants be dismissed with the exception of Plaintiff's claims for nominal and punitive damages against Douglas McDonald in his individual capacity for the alleged incident of excessive force occurring on January 10, 2019 and Plaintiff's claims for injunctive relief under the First Amendment and RLUIPA for denying Plaintiff attendance at church services against Darrell Vannoy, Joseph LaMartinaire, Tim Delaney, Jimmy Cruze, Chad Oubre, Ricky Sharky, and Douglas McDonald.[174]

IT IS FURTHER RECOMMENDED that Plaintiff's claims against Darrell Vannoy, Joseph LaMartinaire, Tim Delaney, Jimmy Cruze, Chad Oubre, Ricky Sharky, and Douglas McDonald in their individual capacities arising under RLUIPA be dismissed.

---

[171] *Id.* § 2000cc-(b)(1).

[172] *See Stewart v. Beach*, 701 F.3d 1322, 1333-34 (10th Cir. 2012).

[173] R. Doc. 1-1, p. 19.

[174] Though "[o]rdinarily a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed," leave to amend is not required if the plaintiff has already pleaded her best case (*Wiggins v. Louisiana State University—Health Care Services Division*, 710 Fed. Appx. 625, 627 (5th Cir. 2017) (internal quotation marks omitted)) or if leave to amend would be futile.  *See Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016), *citing Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014), *quoting Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005).  Here, the facts do not indicate that any amendment with respect to those claims recommended to be dismissed would result in a nonfrivolous claim.  Therefore, the Court should decline to afford Plaintiff an opportunity to amend his complaint with respect to any of the claims that are recommended to be dismissed, as any amendment would be futile.  Further, Plaintiff has already taken the opportunity to amend his complaint several times, and courts are not required to provide plaintiffs with unending leave to attempt to state a claim.  *See, e.g.*, *McDowell v. Our Lady of the Lake*, No. 19-569, 2019 WL 4916165 at n. 32 (M.D. La. Sept. 19, 2019); *Jackson v. United States Postal Service*, No. 19-568, 2019 WL 5587227, at n. 34 (M.D. La. Sept. 19, 2019); *Joseph v. People Ready*, No. 17-124, 2018 WL 5818346, *2 (M.D. La. Nov. 7, 2018).

**IT IS FURTHER RECOMMENDED** that this matter be referred to the magistrate judge for further proceedings on Plaintiff's remaining claims, *i.e.*, Plaintiff's claims regarding excessive force against Douglas McDonald and regarding infringement upon his First Amendment right to attend religious services against the relevant Defendants in their individual and official capacities and Plaintiff's claim against these Defendants for the same acts in their official capacities arising under RLUIPA.  An order regarding service will be issued separately.[175]

## ORDER

Considering the issuance of this Report and Recommendation, Plaintiff's Motion for Status Conference[176] is **DENIED**.

Signed in Baton Rouge, Louisiana, on November 23, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[175] Plaintiff formally requested service in his original complaint.  R. 1-1, p. 25.  The undersigned will issue orders regarding service following a ruling on this Report, if appropriate.
[176] R. Doc. 11.